No. 13623

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

VIOLET SIMMONS,

Plaintiff and Appellant,

-vs-

CITY OF GLENDIVE, MONTANA, et al.,

Defendants and Respondents.

---

Appeal from:   District Court of the Seventh Judicial
               District,
               Honorable M. James Sorte, Judge presiding.

Counsel of Record:

For Appellant:

Calton and Stephens, Billings, Montana
Robert L. Stephens argued, Billings, Montana

For Respondents:

Richard A. Simonton argued, Glendive, Montana
Jerry D. Cook, Glendive, Montana

---

Submitted: September 21, 1977

Decided: DEC 12 1977

Filed: DEC 12 1977

_Thomas J. Kearney_
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiff Violet Simmons appeals from a judgment entered in the District Court, Dawson County, in favor of defendants the City of Glendive, Montana, and several of its officials.

Plaintiff brought this action in 1971, seeking damages for alleged wrongful and illegal termination of water services to property she owned in Glendive. At that time the City of Glendive operated a city water system and supplied and distributed water services to residents within the city. On April 12, 1976, following trial before the court without a jury, the District Court entered findings of fact and conclusions of law in favor of defendants, hereinafter referred to as the City. Plaintiff moved to set aside the findings and conclusions or alternatively, for a new trial. These motions were denied. Judgment was entered against plaintiff. This appeal followed.

In 1958, plaintiff began building a structure at the rear of a lot she owned in Glendive. On the front portion of this lot was a four-plex apartment building owned by plaintiff comprising Nos. 314, 314 1/2, 316 and 316 1/2 West Brennan Street. The structure at the rear of this lot originally was to be a garage, but at some point during its construction plaintiff decided to make it a residence. Water and sewer lines were placed between the City's main line and this structure just after construction started. The lines were hooked up and the water service became operative some years later when the structure was first used as a home. Plaintiff thought the house was receiving water from the metered line running into the four-plex, when, in fact, it was receiving unmetered water directly from the City's main line.

In 1969 the City discovered the small house was receiving water not paid for, because it was not metered. The mayor then instructed the city meter man to inform plaintiff she was violating a city ordinance by receiving unmetered water, and to make arrangements for the installation of a water meter at the house. While there is a dispute in the testimony as to what occurred when the meter man attempted to install the meter, it is clear plaintiff refused installation when it was offered.

Water service to the small house was cut off on the mayor's order when he learned plaintiff had refused to allow installation of the water meter. The City then prepared a bill for the water plaintiff had received at the house. It determined water service had been supplied, but not paid for, from September 30, 1959 to May 26, 1969.

Plaintiff refused to pay this bill claiming she received water at the small house for only 7 years, rather than the nearly 10 years for which she was billed. Plaintiff remained in the house after the termination of its water service. She testified that for a year and a half she hand carried water to the small house from the four-plex. Ultimately, plaintiff attached a hose to an outside spigot of the four-plex, and supplied water to the small house by means of this hose. She used the hose to provide water to her house at various times for several months, beginning in the summer 1970.

In October 1970, the City discovered plaintiff was supplying water to her house through the hose. On October 16, the City water clerk sent plaintiff a notice by certified mail that the use of the hose to supply water to her house was a violation of City ordinances and Public Service Commission regulations and water

service to the four-plex would be terminated if the use of the hose was not discontinued by October 26, 1970. Plaintiff acknowledged receipt of this notice. The City later learned plaintiff was continuing to use the hose to supply water to her house, and on October 30, 1970, water service to the four-plex was terminated by the City.

Tenants living in the four-plex moved out within a few days of the termination of its water services. Plaintiff retained a series of lawyers during the following months, but was unable to get water service restored to the four-plex. In the spring 1971, plaintiff discontinued heat and electricity at the four-plex; she testified that without rental income these utilities became too expensive to maintain.

After 1971, plaintiff made no request to the City to restore water service to the four-plex. She testified that by then, the water pipes in the four-plex were damaged and without extensive repair could not carry water if it was restored. Plaintiff brought this action on April 28, 1971, seeking damages for lost rentals and various expenses she allegedly incurred as a consequence of the City's termination of water services to the four-plex.

The issue on appeal is whether the evidence shows the City of Glendive, acting as a public utility, exceeded its lawful authority in terminating water services to plaintiff's four-plex. Resolution of this question turns on the City's purpose in terminating the water services.

Plaintiff contends the City turned off the water to the four-plex for the purpose of forcing her to pay the disputed bill for unmetered water supplied to her small house, and to induce her to install a meter there.

While plaintiff testified she knew water service to the four-plex had been terminated because of her use of the hose to supply

water to the small house after the City had shut off the water to that structure, she also testified she was led to believe water service to the four-plex would be restored if she paid the disputed bill. This information allegedly was related to her at various times by attorneys she retained in the course of her efforts to have this service restored. Plaintiff also testified the mayor told her directly that she would have to pay the bill to get the water turned back on at the four-plex. Further, that the city water clerk told one of her attorneys, who in turn told plaintiff, that payment of the bill would result in restoration of service to the four-plex. Plaintiff argues that if the City would have restored water service to the four-plex upon payment of the disputed bill for water supplied to her small house, it follows the City shut off water to the four-plex solely to force such payment.

The City concedes it is without authority to terminate water services to a structure for the purpose of forcing the resolution of a collateral dispute not affecting the structure. It contends that the evidence here shows plaintiff's payment of the disputed bill was not a condition precedent to restoration of the four-plex's water, but that the service was terminated because plaintiff violated certain rules and regulations of the Public Service Commission and Glendive city ordinances by providing water to her house by means of the hose attached to the four-plex.

The mayor testified that shortly after service to the four-plex was terminated, he spoke to plaintiff and informed her that if she reapplied for service to the four-plex and removed the hose between it and her house, the City would restore service. The city water clerk testified the mayor had not instructed him to require plaintiff to pay the disputed bill as a prerequisite

to acceptance of any application plaintiff might make for restoration of service to the four-plex. The city public works director also testified stating that restoration of water service to the four-plex was conditioned only on plaintiff's discontinuance of her use of the hose.

The notice sent by the city water clerk to plaintiff two weeks before termination of service to the four-plex stated such termination would result, if plaintiff continued to supply water to her house by means of the hose connected to the four-plex. There is no mention in this notice of the disputed bill, and no indication that plaintiff's failure to pay it would trigger the shutoff of water to the four-plex.

The October 16 notice stated that plaintiff was violating regulations of the Montana Public Service Commission and a City Code by supplying water to her house with the hose from the four-plex. The relevant rules and regulations of the City of Glendive Water Company, approved by the Public Service Commission of Montana, admitted into evidence and applicable at the time pertinent provided:

> "Rule G-1. * * * Service will be furnished to any consumer who fully and truly sets forth all the purposes for which water may be required and who agrees to and conforms with all rules and regulations governing the service * * *."

> "Rule G-5. No plumber or other person will be allowed to make connection with any conduit, pipe or other fixture connecting therewith or to connect pipes when they have been disconnected, or to turn water off or on, on any premises, without permission from the [water] company."

"Rule G-6. Service pipes shall be so arranged
that the supply of each separate building, house or
premises may be controlled by a separate curb cock,
placed within or near the line of the street curb,
under rules established by the Water Company or civil
authorities. This curb cock and box must be kept in
repair and easily accessible by the owner of the premises."

"Rule G-12. For violation of any of these rules, or
for nonpayment of water rent, for either domestic,
sprinkling or other purposes, the company has the
right to turn off the water without further notice * * *."

"Rule G-13. The foregoing general rules shall be
effective for all water utilities operating in
Montana. * * *

"* * *

"In addition to the general flat rate and meter
rate rules, a utility may adopt, subject to the approval
of the Public Service Commission, other rules to be
designated as special rules, to fit local conditions.
In case of any apparent conflict in the rules, the
general rules shall govern."

"Rule M-9. In no case will the company furnish water
from one meter to two or more houses, whether the same
are owned by one person or not."

Glendive City Ordinance Number 418, enacted in 1928,

provides in part:

"* * *

"Sec. 2. No plumber or other person will be
allowed to make connections with any conduit, pipe,
or other fixture connecting therewith, or connect
pipes when they have been disconnected, or to turn
water off or on, on any premises without permission
of the water department.

"Sec. 3. Service pipes shall be so arranged that
the supply for each separate building or house may
be controlled by a separate curb box placed at the
out side of the sidewalk. * * *."

Having heard the conflicting testimony as to the City's

purpose in terminating service to the four-plex, the District

Court found the City's action was not taken to force payment of

the disputed bill. Rather, the action was taken to discourage

plaintiff from continuing the practice of supplying water to the

small house from the four-plex, a practice prohibited by the quoted rules and regulations and city ordinance.

In City of Missoula v. Rose, 164 Mont. 90, 92, 519 P.2d 146 (1974), this Court stated:

> "We have consistently held that this Court cannot substitute its weighing of the evidence for that of the trial court. When there is a conflict in the evidence, the findings of the trial court are presumed to be correct if supported by the evidence most favorable to the prevailing party. * * * The fact that there was a conflict in the testimony does not justify a reversal where there is sufficient evidence to support the trial court's findings of fact."

There was sufficient evidence upon which the District Court could base its finding that termination of water services to plaintiff's four-plex was not for the purpose of forcing the payment of the bill for water previously supplied to the small house.

We note plaintiff challenged neither the rules and regulations nor their effect on her use of a hose to supply water metered at one residence, to another unmetered residence. While a utility may enforce reasonable regulations by terminating service to a consumer who violates such regulations, termination should not be seen as a necessarily proper response in every case. When there are less drastic remedies available, such as injunctive or other relief, termination will not be favored.

For the reasons set forth herein, the judgment in the instant case is affirmed.

Daniel J. Shea
Justice.

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.